# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00184-SCT

*TRUSTMARK NATIONAL BANK*

*v.*

*PIKE COUNTY NATIONAL BANK*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/20/96 |
| TRIAL JUDGE: | HON. W. HOLLIS McGEHEE, II |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | NORMAN B. GILLIS, JR. |
| ATTORNEYS FOR APPELLEE: | GRADY F. TOLLISON, JR. |
| | DAVID N. USRY |
| | BETTY MORGAN BENTON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND REMANDED - 6/18/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/9/98 |

**BEFORE SULLIVAN, P.J., ROBERTS AND WALLER, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This appeal is brought before this Court by Trustmark National Bank from the Chancery Court of Pike County, Mississippi. Pike County National Bank (PCNB) filed suit to determine its status as primary lienholder, against other lienholders, on certain lands owned by William Watkins. Although other parties were named defendants, they were later dismissed, and Trustmark was the only remaining defendant at the time the judgment was issued by the lower court.

¶2. The case was presented to the lower court on agreed facts with a motion for summary judgment. The chancellor ruled that Trustmark's lien had expired and was no longer valid. A judgment was entered quieting title in the property and authorizing judicial foreclosure of the property. Subsequently, the property was sold.

¶3. Aggrieved from the judgment of the chancery court, Trustmark has appealed to this Court raising

the following issue:

**I. WHETHER THE SEVEN YEAR TIME PERIOD OF A JUDGMENT CREDITOR'S STATUTORY LIEN, PURSUANT TO MISS. CODE ANN. § 15-1-47, IS EXTENDED FOR THE AMOUNT OF TIME THE AUTOMATIC STAY IS IN EFFECT IN THE JUDGMENT DEBTOR'S BANKRUPTCY PROCEEDING.**

¶4. It is this Court's opinion that the automatic stay of Watkins' bankruptcy prevented Trustmark from executing its judgment on the property. Because Trustmark could not execute on the judgment, the time in which the bankruptcy proceedings were taking place (4 years, 4 months, and 16 days) should not be computed as any part of the seven year limitations period prescribed in Miss. Code Ann. § 15-1-47 (1995). Therefore, Trustmark's judgment lien still had priority over PCNB's deed of trust on September 28, 1995, the date of PCNB's complaint. Due to the automatic stay arising from Watkins' bankruptcy proceeding, Trustmark's judgment lien was extended for an additional 4 years, 4 months, and 16 days, beyond the original seven year limitations period.

¶5. The decision of the lower court should be reversed and remanded for further proceedings not inconsistent with this Court's opinion.

## STATEMENT OF THE FACTS

¶6. On July 10, 1987, Trustmark enrolled a judgment against William Watkins in the amount of $12, 060.24, plus costs and post judgment interest. The amount due on the judgment as of October 25, 1996, was $22, 678.07. On July 10, 1987, pursuant to Miss. Code Ann. § 11-7-191, Trustmark's judgment became a valid lien on all property owned by Watkins in Pike County, including the 59.60 acres (the property) owned by Watkins in Section 34, Township 4 North, Range 7 East, which is the property that is the subject of the suit.

¶7. On September 1, 1987, Watkins filed a Chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Mississippi. During March of 1990, Watkins converted those proceedings into a Chapter 7 liquidation. Pursuant to 11 U.S.C. § 362, the automatic stay went into effect prohibiting any proceedings of creditors against Watkins.

¶8. During the bankruptcy proceedings, Watkins executed a deed of trust in favor of PCNB on July 12, 1988. The deed of trust was recorded on July 13, 1988. At this time, Trustmark's judgment lien was still in effect and had priority over PCNB's deed of trust. On January 16, 1992, Watkins was discharged by final order of the U.S. Bankruptcy Court.

¶9. PCNB filed its complaint on September 28, 1995, in order to quiet title and determine its claim to the property. The complaint alleged that Trustmark's enrolled judgment was barred by Miss. Code Ann. § 15-1-43. PCNB claimed that Trustmark's judgment expired on July 10, 1994, seven years after it was enrolled on July 10, 1987. PCNB sought the removal of Trustmark's judgment as a cloud on the title, or a declaration that the judgment was void. Trustmark responded that the seven year time period was tolled for 4 years, 4 months, and 16 days by the automatic stay arising from the bankruptcy proceedings. According to Trustmark, the time of the bankruptcy proceedings (4 years, 4 months, and 16 days) should be added to the seven year time period of its judgment.

¶10. The chancellor ruled that the automatic stay of the bankruptcy proceeding did not toll the running of the seven year period. Further, the chancellor held that Trustmark had failed to take any action to protect its rights by renewing its judgment within the original seven year period. The chancellor found that Trustmark had slumbered on its rights and that its judgment lien had expired and was no longer valid. Trustmark appeals now to this Court.

## DISCUSSION OF THE ISSUE

**I. WHETHER THE SEVEN YEAR TIME PERIOD OF A JUDGMENT CREDITOR'S STATUTORY LIEN, PURSUANT TO MISS. CODE ANN. § 15-1-47, IS EXTENDED FOR THE AMOUNT OF TIME THE AUTOMATIC STAY IS IN EFFECT IN THE JUDGMENT DEBTOR'S BANKRUPTCY PROCEEDING.**

¶11. Both parties were in agreement at trial, and remain so on appeal, as to the underlying facts of the case. However, their views quickly depart from their interpretation of the applicable law. This Court applies a de novo standard of review when reviewing questions of law. *Snapp v. Harrison*, 699 So. 2d 567, 569 (Miss.1997).

¶12. The legislature set forth the duration and limitation of a judgment lien in Miss. Code Ann. § 15-1-47.

> A judgment or decree rendered in any court held in this state shall not be a lien on the property of the defendant therein for a longer period than seven years from the rendition thereof, unless an action be brought thereon before the expiration of such time. **However, the time during which the execution of a judgment or decree shall be stayed or enjoined by supersedeas, injunction or other process, shall not be computed as any part of the period of seven years**.

Miss. Code Ann. § 15-1-47 (1995) (emphasis added).

¶13. Trustmark filed its judgment lien on July 10, 1987. According to the statutory language, this judgment would expire on July 10, 1994, unless an action was brought on the judgment. However, if the execution of the judgment was stayed or enjoined by process, the length of time attributed to the stay was not to be computed in the seven year time period.

¶14. On September 1, 1987, Watkins filed his petition for bankruptcy. The filing of this petition operated as an automatic stay against Trustmark executing its judgment against the property. 11 U.S.C. § 362 (a)(2)(1994). The stay remained in effect until Watkins was discharged on January 16, 1992, a period of 4 years, 4 months, and 16 days. 11 U.S.C. § 362 (c)(2)(C) (1994).

¶15. The Bankruptcy Act specifically addresses extensions of time regarding claims of creditors against the bankruptcy debtor. The Act states that

> if applicable nonbankruptcy law. . .fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor,. . .,and such period has not expired before the date of the filing of the petition, then such period has not expired until the later of--

(1) the end of such period, **including any suspension of such period occurring on** or after the commencement of the case.

11 U.S.C. § 108 (c) (1994) (emphasis added).

¶16. The nonbankruptcy law that had fixed a period within which the judgment lien could have been executed by Trustmark was Miss. Code Ann. § 15-1-47 (1995). That statute fixed the time period at seven years. At the time Watkins filed his bankruptcy petition Trustmark's judgment lien had not expired. The Act allows the time of suspension, during which the judgment could not be executed, to be added onto the original period.

¶17. The suspension went into effect on September 1, 1987, at the filing of Watkins' bankruptcy petition. The suspension remained in effect until January 16, 1992, when Watkins was discharged from bankruptcy. After Watkins was discharged, the stay was lifted. Trustmark could then execute its judgment. However, Trustmark still had the remainder of the period allotted in Miss. Code Ann. § 15-1-47, because the "clock" was not running during the bankruptcy proceedings.

¶18. PCNB argues the question of whether the filing of a bankruptcy petition tolls a statute of limitations is addressed by the Bankruptcy Act. In *Home Building Mart, Inc. v. Parker*, 370 So. 2d 916, 917-18 (Miss. 1979), the Court held that the language of the Bankruptcy Act expressly suspended the running of the state statute of limitations during the pendency of the bankruptcy proceedings. PCNB interprets this holding as the basis for its claim that the Bankruptcy Act, not Mississippi law, determines whether the statute of limitations is tolled.

¶19. PCNB states that Mississippi law depends on federal statutes in determining whether the bankruptcy stay tolls, suspends, or extends a statute of limitations. This is a correct assessment of the law. However, reading the applicable sections of the Bankruptcy Act together with the Mississippi law, it is clear that the statute of limitations in Miss. Code Ann. § 15-1-47 should have been tolled at the moment Watkins filed his petition in bankruptcy court.

¶20. When Watkins filed his petition for bankruptcy, 11 U.S.C. § 362(a)(2) prohibited Trustmark from enforcing its judgment against the property. The automatic stay of section 362 remained in effect until Watkins was discharged from bankruptcy on January 16, 1992. 11 U.S.C. § 362(c)(2)(C) (1994). This period of time is not to be computed as part of the seven year period that a judgment lien is valid. Miss. Code Ann. § 15-1-47 (1995).

¶21. PCNB asserts that entire period of the bankruptcy stay should not be added to the statute of limitations. PCNB cites *Rogers v. Corrosion Products, Inc.*, 42 F.3d 292, 295-97 (5th Cir. 1995), to support this assertion. However, PCNB's assertion and reliance on *Rogers* is incorrect.

¶22. In *Rogers*, a worker brought a tort action in Louisiana for injuries suffered against his employer. The employer, who had been placed in involuntary bankruptcy, moved for summary judgment based on expiration of the prescriptive period. The Fifth Circuit Court of Appeals had to make an "Erie guess" as to whether Louisiana's highest court would apply the judicial doctrine *contra non valentem agere non currit praescripto*[1], recognized in Louisiana, to proceedings stayed by bankruptcy filings. *Rogers*, 42 F.3d at 295. The doctrine had been divided into four categories, two of which were applicable to the facts in *Rogers*. Rogers argued the bankruptcy proceeding was connected to the

proceeding that prevented him from suing or that the debtor (employer), by availing itself to the safe harbor of bankruptcy, had prevented Rogers from suing. *Id.* Because two different appellate courts in Louisiana refused to apply the doctrine to bankruptcy stays, the Fifth Circuit did not broaden the doctrine to include bankruptcy proceedings. *Id.*

¶23. Although PCNB cites *Rogers* to support its position that the time of the bankruptcy proceedings is not added onto the seven year period in Miss. Code Ann. § 15-1-47, this Court would point out that *Rogers* does not support PCNB's argument that state law does not determine the tolling of the statute of limitations. The court in *Rogers* looked first to state law and then to the Bankruptcy Code. "If Louisiana law does not suspend prescription, the next step is to examine the Bankruptcy Code to determine whether it provides a separate basis for suspension." *Rogers*, 42 F.3d at 295. Obviously, the court considered first Louisiana state law for authority to toll the running of the period. Upon finding no authority, the court then referred to the Bankruptcy Code.

¶24. PCNB correctly notes that the Fifth Circuit interpreted 11 U.S.C. § 108(c) and found that it did not create a separate tolling provision. *Rogers*, 42 F.3d at 297. However, the court also held that the "statute plainly states that for the time period to be suspended, other federal or state law must mandate it and then be incorporated through § 108(c)." *Id.* In *Rogers*, there was no other federal or state law that would mandate the suspension of the time period. Therefore, the court found that the federal law did not separately toll the running of the time period.

¶25. The facts before this Court are distinguishable in several ways from those in *Rogers*. The Fifth Circuit was interpreting Louisiana law where the highest state court had not decided the issue. The Supreme Court of Mississippi is the "ultimate expositor" of the law in Mississippi. *Peterson v. State*, 671 So. 2d 647, 652 (Miss. 1996) (quoting *UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc.*, 525 So. 2d 746, 754 (Miss. 1987)). Where there is law clearly on point, this Court does not need to consult other jurisdictions.

¶26. There is Mississippi law that specifically and explicitly mandates that the seven year period be tolled while execution on the judgment is stayed. Miss. Code Ann. § 15-1-47 (1995). The Fifth Circuit, interpreting federal bankruptcy law, held that the time period could be suspended if state law mandated it and then is incorporated through section 108(c). *Rogers*, 42 F.3d at 297. As discussed above, Miss. Code Ann. § 15-1-47 states that the time which execution on the judgment is stayed is not to be counted in the seven year period. Section 108 states that if nonbankruptcy (i.e. state) law fixes a period for commencing a suit against a debtor, and that period has not expired before the bankruptcy petition is filed, then the period does not expire until the end of the fixed period, including any suspension of the period.

¶27. Incorporating Miss. Code Ann. § 15-1-47 through 11 U.S.C. § 108 would toll the running of the seven year time period upon the filing of a bankruptcy petition. In other words, the automatic stay that goes into effect immediately upon the filing of the bankruptcy petition stays the execution on the judgment lien. The time between the filing of the bankruptcy petition and the end of the proceedings is not to be counted as part of the seven year period in Miss. Code Ann. § 15-1-47.

¶28. Applied to the case presently before the Court, this would mean that the time period between September 1, 1987, and January 16, 1992, is not to be counted as part of the seven year duration of Trustmark's judicial lien that was filed and became effective on July 10, 1987. The time was stopped

upon Watkins' filing his bankruptcy petition on September 1, 1987, and began to run again on January 16, 1992, when he was discharged from bankruptcy.

¶29. PCNB also claims that Mississippi law is adverse to Trustmark's position. PCNB cites Miss. Code Ann. § 15-1-43, which contains the limitations on actions founded on domestic judgments. That section provides

> All actions founded on any judgment or decree rendered by any court of record in this state, shall be brought within seven years next after the rendition of such judgment or decree, and not after, and an execution shall not issue on any judgment or decree after seven years from the date of the judgment or decree.

Miss. Code Ann. § 15-1-43 (1995). PCNB notes that there is no provision in this section for tolling of the limitations period. Further, PCNB asserts the only method to extend the life of a judgment is an action to renew that judgment. *Anderson-Tully Co. v. Brown*, 383 So. 2d 1389, 1390 (Miss. 1980); *Deposit Guar. Nat'l Bank v. Roberts*, 483 So. 2d 348, 352 (Miss. 1986)(running of statute of limitations tolled upon filing suit).

¶30. Miss. Code Ann. §15-1-43 must be read in pari materia with Miss. Code Ann. § 15-1-47, in order to determine the legislative intent. *Yarbrough v. Camphor*, 645 So. 2d 867, 871 (Miss. 1994). Given this rule of construction, an action on a judgment must be brought within the seven year time period in Miss. Code Ann. § 15-1-47; otherwise, the judgment will expire and cease to exist. However, if the execution of that judgment is stayed, the time during which it is stayed is not to count towards the running of the seven year statute of limitations.

¶31. A judgment must be brought within a seven year time frame, but that seven year period is not necessarily seven consecutive years. The time begins to run when the judgment lien is filed and is stopped each time the execution on the judgment is stayed. The seven year time period does not start over with each stay on the execution of the judgment. When the execution on the judgment is no longer stayed, the time begins to run again at the point in time where it was previously stopped. The only way for a judgment creditor to extend a judgment lien for an additional seven year time period is to bring an action to renew the judgment before the original seven year period expires.

¶32. The seven year time period is like a block of time that can be divided. As the seven year time runs, pieces of the block are taken away. Each time execution on the judgment is stayed, the block is held in suspension. When the stay on the judgment is removed, the block is taken out of suspension, and the time begins to run again with the pieces of the block taken away. Although it may take more than seven years to take all of the pieces from the block, when the last piece is taken and added together with the other pieces the total is still a seven year block of time.

¶33. Lastly, PCNB argues that Trustmark slumbered on its rights. Watkins was discharged in bankruptcy on January 16, 1992. Trustmark took no action to enforce its judgment lien against the property from January 16, 1992, until PCNB filed its complaint on September 28, 1995. PCNB claims Trustmark acted only after PCNB filed its complaint.

¶34. PCNB asserts that Trustmark could have asked the bankruptcy court to lift the automatic stay. Granted, Trustmark could have requested the bankruptcy court to lift the stay in order to allow

Trustmark to foreclose on the property. It is of no moment that Trustmark could have made such a request. There is nothing in the record before this Court that indicates the bankruptcy court would have lifted the stay to allow Trustmark to execute on its judgment. This is merely a speculative argument by PCNB. The statute does not require the creditor to attempt to have the "staying of the judgment" lifted in order for the creditor to execute on the judgment. Miss. Code Ann. § 15-1-47 (1995).

¶35. PCNB collectively argues that Trustmark could have litigated the priority of its lien against other secured creditors, filed an action to renew its judgment any time after January 16, 1992, and before July 10, 1994 and could have executed on other property owned by Watkins. Simply put, these arguments are speculative. Trustmark could have done any of these. However, Trustmark was not required to do anything. Trustmark was protected by the statutes and its judgment lien.

¶36. Trustmark's judgment lien was for a period of seven years. The time began to run on July 10, 1987, when Trustmark filed its judgment lien. The running of the time period was suspended on September 1, 1987, when Watkins filed his petition in bankruptcy. At the time of the suspension 55 days of the seven year time period had expired. The time did not begin running again until January 16, 1992, when Watkins was discharged in bankruptcy. This extended the judgment lien's original expiration date from July 10, 1994, to include the additional time of 4 years, 4 months, and 16 days, which was the duration of the bankruptcy proceedings.

¶37. Trustmark did not have to do anything to ensure its judgment was intact for the remainder of the seven year time period. The judgment lien was still intact and valid after the bankruptcy proceedings. True, Trustmark could have executed on the judgment after Watkins was discharged in bankruptcy or simply filed a renewal sometime before the seven year period ran. However, this was unnecessary as the judgment had been extended in order to account for the time it had been stayed due to the bankruptcy proceedings. Trustmark was not required to take any action to ensure its lien remained in effect except that which is enumerated in Miss. Code Ann. §§ 15-1-43 and 15-1-47.

## CONCLUSION

¶38. The lower court erred by finding Trustmark's judgment lien had expired and allowing PCNB to foreclose on the property. Miss. Code Ann. § 15-1-47 specifically tolls the running of a judgment lien where the execution on the judgment has been stayed. In the case before the Court, Watkins' filing for bankruptcy caused the automatic stay of 11 U.S.C. § 362 to stay any judgment against the property owned by Watkins. Incorporating Mississippi law through 11 U.S.C. § 108, the period during which the bankruptcy proceedings took place (4 years, 4 months, and 16 days) is not to be counted as part of the seven year time period enumerated in Miss. Code Ann. § 15-1-47.

¶39. Because the property has been sold by PCNB, the exact expiration of the judgment lien is not relevant to the disposition of this case on appeal. PCNB admits to this Court that the issue is money.

¶40. Since PCNB sold the property and collected the proceeds from that sale, this case should be reversed and remanded for further proceedings to determine the exact amount PCNB owes to Trustmark in order to satisfy Trustmark's judgment lien. The amount paid to Trustmark should reflect interest accrued on the judgment since the foreclosure, including the time of appeal and hearing on remand. Any proceeds from the foreclosure sale should be paid first to Trustmark to satisfy its

judgment lien. Trustmark's judgment lien had priority over PCNB's deed of trust and should be treated accordingly. Therefore, this case is reversed and remanded for further proceedings not inconsistent with this Court's opinion.

¶41. **REVERSED AND REMANDED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH AND WALLER, JJ., CONCUR. PRATHER, C.J., McRAE AND MILLS, JJ., NOT PARTICIPATING.**

1. "No prescription runs against a person unable to bring an action." <u>Black's Law Dictionary</u> 327 (6th ed. 1990).